1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

VITO BRUNO,

                         Petitioner,

vs.

BILL DONAT, et al.,

                         Respondents.

Case No. 3:09-cv-00165-RCJ-VPC

ORDER

This is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a Nevada state prisoner, who has since been released from the custody of the Nevada Department of Corrections (ECF #13).[1] Now before the court is respondents' answer to the remaining grounds for relief (ECF #36).

**I. Procedural History and Background**

On November 17, 2005, pursuant to a jury verdict, the state district court entered a judgment of conviction against petitioner of one count of felony grand larceny, one count of felony attempting

---

[1] The federal habeas statute gives district courts jurisdiction to entertain petitions challenging a judgment of conviction only for persons who are "in custody" under the conviction at the time that the petition is filed. *See, e.g., Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Petitioner was released from Nevada Department of Corrections' custody sometime around December 1, 2011 (*see* ECF #44). However, he dispatched this federal petition for filing on or about March 26, 2009, and therefore, this court retains jurisdiction over his petition.

to obtain money under false pretenses, and two counts of felony burglary. Exhs. 23, 36.[2]  Petitioner was convicted of stealing an expensive jacket from Nordstrom and attempting to return it to Neiman Marcus for cash.  Exh. 23.  The state district court additionally adjudicated petitioner a habitual criminal and sentenced him to four concurrent terms of five to twenty years.  Exh. 36.

Petitioner appealed.  Exh. 41.  On June 30, 2006, the Nevada Supreme Court affirmed the convictions, and remittitur issued October 6, 2006.  Exhs. 43, 45.

Petitioner filed a state postconviction petition for writ of habeas corpus on September 21, 2007. Exh. 48.  The state district court conducted a hearing on December 6, 2007, and denied the petition in its order filed January 17, 2008.  Exh. 55.  The Nevada Supreme Court affirmed the denial of the petition on February 26, 2009, and remittitur issued on March 24, 2009.  Exhs. 74, 75.

In the meantime, petitioner filed a motion to correct an illegal sentence on May 13, 2008.  Exh. 60.  The state district court denied the motion on June 7, 2008.  Exh. 63.  The Nevada Supreme Court construed petitioner's filing as an appeal from the denial of his motion for rehearing and dismissed the appeal for lack of jurisdiction on August 29, 2008.  Exh. 71.  Remittitur issued on September 23, 2008. Exh. 73.

Petitioner dispatched his original federal habeas petition on March 26, 2009 (ECF #8).  Now before the court is the operative, second amended petition (ECF #13).  Ground 6(H) of the second amended petition has been dismissed (*see* ECF #s 28, 29, 31).  Respondents now answer the remaining grounds (ECF #36).

## II. Legal Standards

### A. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

---

[2] Exhibits 1-75 are exhibits to respondents' motion to dismiss (ECF #18) and may be found at ECF #s 19-22.

1

        (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3

        (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5

28 U.S.C. § 2254(d).

6

        The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

7

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

8

the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is

9

contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if

10

the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

11

or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

12

Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

13

*Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)

14

and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). This court's ability to grant a writ is limited to cases

15

where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts

16

with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

17

        A state court decision is contrary to clearly established Supreme Court precedent, within

18

the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law

19

set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

20

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

21

from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v.*

22

*Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

23

        A state court decision is an unreasonable application of clearly established Supreme Court

24

precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

25

legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

26

of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The

27

"unreasonable application" clause requires the state court decision to be more than incorrect or

28

1   erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*.

2   (quoting *Williams*, 529 U.S. at 409).

3       In determining whether a state court decision is contrary to federal law, this court looks to the

4   state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford*

5   *v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Further, "a determination of a factual issue made

6   by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

7   the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

8   **III. Instant Petition**

9       **A. Insufficiency of the Evidence Claims**

10       **Grounds 1, 2 & 9**

11       In ground 1, petitioner alleges that his rights to due process and a fair trial under the Sixth and

12   Fourteenth Amendments have been violated because insufficient evidence supported his conviction

13   (ECF #13, pp. 3-5).  Petitioner's wife and co-defendant attempted to return a black, cashmere Zegna

14   jacket to Nordstrom, and petitioner later returned a black, cashmere Zegna jacket to Neiman Marcus.

15   *Id*. at 3.  Petitioner contends that while evidence was presented that a black, leather Zegna jacket that

16   retailed for $1,995 was missing from Nordstrom, no evidence was presented to show that a black,

17   cashmere Zegna jacket that retailed for $1,495 was missing.  *Id*.  In ground 2, petitioner asserts that the

18   trial court erred by admitting a police officer's testimony that petitioner admitted that he took the jacket

19   from Nordstrom as there was insufficient *corpus delicti* under Nevada's rule, which violated his Fifth,

20   Sixth and Fourteenth Amendment rights to due process and a fair trial.  *Id*. at 7-8.  In ground 9,

21   petitioner claims that insufficient evidence supported the "intent element required for a conviction of

22   burglary," stemming from additional charges that he stole a women's wallet from Nordstrom.  *Id*. at 45-

23   47.

24       "The Constitution prohibits the criminal conviction of any person except upon proof of guilt

25   beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397

26   U.S. 358 (1970)).  On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C.

27   § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence

28   adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

1  *Id.* at 324.  "[T]he standard must be applied with explicit reference to the substantive elements of the

2  criminal offense as defined by state law."  *Id.* at 324 n.16.

3      Under Nevada law, *corpus delicti* must be demonstrated by evidence independent of the

4  confessions or admissions of the defendant.  *See, e.g., Doyle v. State*, 921 P.2d 901, 910-911 (Nev.

5  1996) (overruled on other grounds by *Kaczmarek v. State*, 91 P.3d 16, 29 (Nev. 2004); *Sheriff v.*

6  *Dhadda*, 980 P.2d 1062, 1065-1066 (Nev. 1999).  Confessions and admissions of the defendant may

7  not be used to establish *corpus delicti* absent sufficient independent evidence.  Once the state presents

8  independent evidence that the offense has been committed, admissions and confessions may then be

9  used to corroborate the independent proof.  However, all other relevant evidence may be considered.

10  The *corpus delicti* may be established by purely direct evidence, partly direct and partly circumstantial

11  evidence, or entirely circumstantial evidence.  *Id.*

12

13      In reviewing these claims, the Nevada Supreme Court affirmed [petitioner's] conviction,

14  reasoning:

15      [a] review of the record on appeal reveals sufficient evidence to establish guilt beyond
        a reasonable doubt as determined by a rational trier of fact.  In particular, we note that
16      although there was some confusion about the exact size and material, [petitioner] was
        observed carrying away an expensive black Zegna jacket from Nordstrom's sportswear
17      department. There is no indication that [petitioner] returned with the jacket or paid for
        the missing jacket. The following day, [petitioner] attempted to return the black Zegna
18      jacket to Neiman Marcus for a cash refund. [Petitioner] did not present a receipt for
        purchase of the jacket.  Neiman Marcus took possession of the jacket, and [petitioner]
19      was told that a check would be issued and mailed to him.  Soon after, a loss prevention
        officer with Neiman Marcus verified that the jacket belonged to Nordstrom.
20
            Based on the above, we conclude that the jury could reasonably infer from the
21      evidence presented that [petitioner] committed the crimes of grand larceny [Nev. Rev.
        Stat. 205.220(1)], burglary [Nev. Rev. Stat. 205.060(1)], and attempt to obtain money
22      under false pretenses [Nev. Rev. Stat. 205.380(1)(a); Nev. Rev. Stat. 193.330(1)].  It is
        for the jury to determine the weight and credibility to give conflicting testimony, and the
23      jury's verdict will not be disturbed on appeal where, as here, sufficient evidence
        supports the verdict.  Moreover, we note that circumstantial evidence alone may sustain
24      a conviction.  Therefore we conclude that the State presented sufficient evidence to
        sustain the convictions.  And finally, because there was sufficient evidence, we also
25      conclude that the *corpus deficit* rule was not violated by the admission of [petitioner's]
        confession to the crimes.
26
    Exh. 43 (citations omitted).
27

28

1    Here, sufficient evidence supports petitioner's convictions.  The record demonstrates that on
2  November 26, 2004, Nordstrom had two black Zegna jackets in their inventory: a leather jacket that
3  retailed for $1995.00 and a cashmere jacket that retailed for $1495.00. Exh. 19 at 47-49.  A Nordstrom
4  employee saw petitioner take the escalator from the first to the second floor in Nordstrom carrying a
5  black Zegna jacket.  *Id*. at 47-48, 72.  The next day, petitioner's wife and co-defendant tried to return
6  a black cashmere Zegna jacket at Nordstrom, but Nordstrom employee's refused to accept the return
7  because petitioner's wife did not have proof of purchase and the jacket matched the description of one
8  that was missing from Nordstrom since the day before.  *Id*. at 81-87.  Shortly thereafter, petitioner
9  attempted to return a black cashmere Zegna jacket at Neiman Marcus in the same mall; because
10  petitioner had no proof of purchase, Neiman Marcus employees accepted the return and told petitioner
11  that the store would mail him a check for the purchase price.  *Id*. at 158-167, 176, 181.  A Neiman
12  Marcus employee who processed the return testified that he was suspicious because the jacket had no
13  tags to indicate where it had been purchased and because petitioner changed his story and contradicted
14  himself, including as to who bought the jacket, why he did not have the receipt, and whether it was a
15  gift and from whom.  *Id*. at 176-179.  After petitioner made the return, loss prevention officers from
16  Nordstrom and Neiman Marcus confirmed that the Zegna jacket that petitioner returned to Neiman
17  Marcus belonged to Nordstrom.  *Id*. at 196-200.
18    The record further shows that on November 28, 2004, petitioner exited a van at a ground level
19  Nordstrom entrance, while his wife remained in the driver seat with the engine running. Exh. 19 at 213-
20  216; Exh. 21 at 19-20.  Alerted by Nordstrom loss prevention personnel, employees recognized the van
21  as the same one that petitioner's wife entered after she tried to return a black Zegna jacket the day
22  before, and therefore, they monitored petitioner via surveillance cameras once he entered Nordstrom.
23  Exh. 19 at 213-223.  A Nordstrom loss prevention officer observed petitioner place a women's wallet
24  under his arm, take the escalator from the first to the second floor, and exit the store on the second floor.
25  *Id*.  Petitioner then turned and re-entered the store.  *Id*.  Petitioner walked out of the surveillance
26  camera's frame; subsequently the camera captured him exiting Nordstrom, without a women's wallet.
27  *Id*. Petitioner struggled with loss prevention officers and was then taken into custody.  *Id*.  A Nordstrom
28  loss prevention officer recovered the wallet from a table just inside the Nordstrom entrance.  *Id*.

1    Petitioner is correct that the record demonstrates some confusion over the size and material of

2    the black Zegna jacket. Exh. 19 at 49, 55, 59; Exh. 20 at 47. However, as the Nevada Supreme Court

3    observed, such a question of evidentiary weight fell within the jury's province. Exh. 43 at 2. Where

4    the record gives rise to conflicting inferences the court is required to conclude that the jury resolved the

5    conflict in favor of the prosecution. *Jackson*, 443 U.S. at 324. With respect to the wallet, the record

6    gives rise to a reasonable inference that petitioner formed the intent to steal something before he exited

7    the running van and entered Nordstrom.

8    The Nevada Supreme Court reasonably applied *Jackson*. Accordingly, petitioner has failed to

9    demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable

10   application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based

11   on an unreasonable determination of the facts in light of the evidence presented in the state court

12   proceeding. 28 U.S.C. § 2254(d). Moreover, Nevada's formulation of the *corpus delicti* rule in this

13   context is a matter of state law and petitioner fails to show that his conviction violated any federal

14   constitutional right. *See Evans v. Lubbers*, 371 F.3d 438, 442 (8th Cir. 2004) (concluding that

15   petitioner's *corpus delicti* claim did not implicate federal constitutional rights); *Gerlaugh v. Lewis*, 898

16   F.Supp. 1388, 1410 (D.Ariz.1995) (rejecting *corpus delicti* claim in federal habeas action as raising a

17   matter of state law). "[I]t is not the providence of a federal habeas court to reexamine state-court

18   determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore,

19   grounds 1, 2 and 9 are denied.

20   **B. Alleged Trial Court Errors**

21   **Ground 3**

22   Petitioner claims that the trial court's ruling that his co-defendant's statement to police was

23   admissible violated his Fifth, Sixth and Fourteenth Amendment rights to confrontation, due process and

24   a fair trial (ECF #13, pp. 10-11).

25   In *Bruton*, the U.S. Supreme Court held that the admission of a non-testifying defendant's

26   statement that inculpates his co-defendants as participants in the underlying criminal offense violates

27   the non-testifying defendant's Sixth Amendment confrontation clause rights. *Bruton v. United States*,

28   391 U.S. 123, 126 (1968). However, if the co-defendant's statement is redacted to eliminate all

-7-

1    reference to the non-testifying defendant, and an inference as to the non-testifying defendant's identity

2    as a participant in the underlying offense only arises when the statement is taken in context with other

3    evidence admitted at trial, no *Bruton* error has occurred.  *Richardson v. Marsh*, 481 U.S. 200 (1987).

4    A *Bruton* error is subject to a harmless error analysis, which may include the consideration of any of

5    the non-testifying defendant's own statements admitted into evidence.  *Harrington v. California*, 395

6    U.S. 250 (1969).

7           Here, prior to trial, defense counsel raised a concern to the court that expected testimony from

8    a police sergeant that petitioner's wife and co-defendant told the sergeant that she knew the Zegna

9    jacket was stolen.  Exh. 19 at 6-10.  The State offered to instruct the sergeant to testify only to the fact

10   that the co-defendant said that she knew the coat was stolen, not how she knew or who stole the coat.

11   *Id*. at 7.  Over defense counsel's continued objection, the court found that as long as the sergeant's

12   testimony was limited as described above it would not run afoul of *Bruton*.  *Id*. at 9.

13          At trial, the State elicited the following testimony from the sergeant:

14          Q: Did [co-defendant] indicate to you whether she had attempted to return that jacket
            herself?
15          A: Yes, she did. She said she had attempted to return the jacket.
            Q: Did she indicate to you whether she knew if that jacket was stolen?
16          A: She did say she knew the jacket to be stolen.

17   Exh. 19 at 261.  The State then elicited testimony by the sergeant that petitioner confessed to stealing

18   and returning the jacket.  *Id*. at 261-64.

19          In rejecting this claim in petitioner's direct appeal, the Nevada Supreme Court, citing

20   *Richardson* and *Harrington*, determined:

21
22          [The sergeant's] testimony [did] not offend *Bruton's* protective rule: it is not facially
            inculpatory because it does not expressly refer to [petitioner].  Only when linked with
            other evidence introduced at trial could the codefendant's statement be considered
23          inculpatory.  Nevertheless, even assuming error we concluded it would have been
            harmless beyond a reasonable doubt.  As noted above, there was substantial evidence
24          of [petitioner's] guilt, including his confession, "and a defendant's own statements may
            be considered in assessing whether a *Bruton* error, if any, was harmless."  Therefore,
25          there was no reversible error.

26   Exhibit 43 at 3-4 (footnotes and accompanying citations omitted).

27          The Nevada Supreme Court reasonably applied *Bruton* and its progeny.  Petitioner has thus

28   failed to demonstrate that the Nevada Supreme Court's determination is contrary to, or involves an

-8-

1   unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court,

2   or was based on an unreasonable determination of the facts in light of the evidence presented in the state

3   court proceeding.  28 U.S.C. § 2254(d).

4          To the extent that petitioner also argues that his co-defendant's statement to the sergeant was

5   inadmissible hearsay, whether a state district court properly applied a state evidentiary rule is generally

6   a question of state law and thus not reviewable in federal habeas proceedings.  *See Estelle v. McGuire*,

7   502 U.S. 62, 67-68 (1991).  In ground 3, the gravamen of petitioner's claim is that his constitutional

8   rights to confrontation were violated;  he does not assert that alleged hearsay violated federal law or

9   rendered the trial fundamentally unfair.  Thus, the claim of inadmissible hearsay in ground 3 is

10  noncognizable in federal habeas.  Accordingly, ground 3 lacks merit and is denied.

11      **Ground 4**

12         Petitioner asserts that the trial court erred in denying his motion to disqualify the trial court

13  judge from sentencing in violation of his Sixth, Eighth and Fourteenth Amendment rights to due

14  process, a fair trial, and to be free from cruel and unusual punishment (ECF #13, pp. 13-16).  Petitioner

15  states that the judge was involved in one of petitioner's prior convictions that was used to seek habitual

16  criminal treatment in this case, "both as the elected district attorney and as the attorney for one of the

17  parties involved in that case."  *Id.* at 13.  He also asserts that the state district judge made comments

18  about the evidence presented at trial that required the judge to disqualify himself from the sentencing

19  hearing.  *Id*.

20         While "a 'fair trial in a fair tribunal is a basic requirement of due process,'" *Withrow v. Larkin*,

21  421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)), questions of judicial bias

22  rarely rise to the level of a constitutional violation.  *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)

23  (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)).  Accordingly, "matters of kinship, personal bias, state

24  policy, remoteness of interest would seem generally to be matters merely of legislative discretion."

25  *Tumey*, 273 U.S. at 523 (citation omitted).  Due process only compels judicial disqualification in the

26  presence of "the probability of actual bias."  *Withrow*, 421 U.S. at 47.

27         In this case, at the close of evidence, petitioner moved for acquittal based on the lack of *corpus*

28  *delicti*.  Exh. 21 at 147-149.  After the jury returned its verdict, the state district court ruled on the

1  motion for acquittal.  *Id*. at 154-157.  The judge made several comments about what he thought the

2  evidence at trial proved, including that petitioner is a sophisticated thief who actually stole both black

3  Zegna jackets.  *Id*. at 155-157.

4       Subsequently, prior to sentencing, petitioner filed a motion to disqualify the state district court

5  judge from conducting petitioner's sentencing because the judge had represented a private party related

6  to an earlier case and later was Clark County District Attorney when petitioner was prosecuted in that

7  case for conspiracy and solicitation to commit murder.  Exh. 26.  That conviction was one of the priors

8  for the state district judge to consider when he weighed a habitual criminal sentence.

9       Under NRS 1.235(1), a party must bring a "for cause" motion to disqualification twenty days

10 before trial or three days prior to the hearing of a pretrial matter.  *See Valladares v. District Court*, 910

11 P.2d 256, 260 (Nev. 1996);  *see also Towbin Dodge, LLC v. Eight Judicial Dist. Ct.*, 112 P.3d 1063

12 (Nev. 2005).

13      In response to the motion to disqualify, the state district court judge filed an affidavit attesting

14 that he had no recollection of petitioner independent of the instant trial.  Exh. 28.  He stated that when

15 petitioner appeared for his arraignment, petitioner had indicated that he and the judge had both been

16 involved in a case about fifteen years ago.  *Id*.  The judge had no recollection of petitioner whatsoever

17 and told petitioner to file a motion if he believed a conflict existed.  *Id*.  Petitioner filed no such motion

18 (prior to trial).  *Id*.  The judge never made any connection between petitioner and the prior matter before

19 or during trial and stated that he harbors no bias in favor of, or prejudice against, either co-defendant

20 in the instant case.  *Id*.  He attested that his statements in ruling on the motion for acquittal that

21 petitioner was a sophisticated thief were based solely on, and could only be based on, evidence

22 presented at trial.  *Id*.

23      In considering this claim on direct appeal, the Nevada Supreme Court explained:

24      [Petitioner] contends that the [Chief Judge] erred in denying his motion to
        disqualify [the trial judge] after the conclusion of the trial and prior to his sentencing
25      hearing. [Petitioner] based his motion on comments made by [the trial judge] after the
        jury verdict, and by the judge's participation as the former District Attorney and as
26      private counsel for one of the parties involved in a prior conviction of [petitioner's] used
        by the State to support habitual criminal adjudication. [The trial judge] filed an affidavit
27      in response to [petitioner's] motion. [The Chief Judge] denied [petitioner's] motion,
        finding that his motion was "untimely and unfounded."  We agree.
28

-10-

1
2
3
4

     NRS 1.235(1)(a) and (b) allow only one window of opportunity in which to make a "for cause" challenge; either twenty days before the date set for a trial or hearing of the case, or three days before the date set for the hearing of any pretrial matter, whichever occurs first. *Valladares v. District Court*, 910 P.2d 256, 260 (Nev. 1996). This court, however, has also stated that it would be inequitable to not allow an affidavit to be filed late where the party seeking disqualification did not have the relevant information until after trial had started.

5
6
7
8
9

     In this case, [petitioner] cannot demonstrate that the district court's comments about the evidence adduced at trial indicated either an actual or implied bias, or were reasonable grounds for disqualification. Moreover, with regard to the district court's alleged involvement in prior cases of his, [petitioner's] motion was untimely. [Petitioner] concedes that he was aware of the grounds prior to trial . . . . [petitioner' did not move for disqualification until after the district court presided over numerous pretrial motions and hearings and the entirety of the trial. Therefore, we conclude that [the Chief Judge] did not err in denying [petitioner's] motion.

Exh. 43 at 4-5.

10
11
12

As due process only compels judicial disqualification in the presence of "the probability of

actual bias," *Withrow*, 421 U.S. at 47, this court is wholly unconvinced that petitioner has alleged a

level of judicial bias that would rise to the level of a constitutional violation. *FTC* , 333 U.S. at 702.

13
14
15

This court notes that the record reflects that, while petitioner faced a potential life sentence as a habitual

criminal, the judge sentenced him to four concurrent terms five years to life, with 333 days credit for

time served. Exh. 35 at 14. But assuming, *arguendo*, that ground 4 implicates due process, considering

16
17
18

the trial judge's affidavit and petitioner's acknowledgment that he was long-aware of the alleged

conflict, petitioner has failed to demonstrate that the Nevada Supreme Court's decision is contrary to,

or involves an unreasonable application of, clearly established federal law, as determined by the U.S.

19
20
21

Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.[3] 28 U.S.C. § 2254(d). Accordingly, ground 4 is denied.

22
23
24
25
26
27
28

---

    [3]

 The court also agrees, with respondents that, in any event, ground 4 appears to be procedurally barred as to the claim that the state district court judge had been involved as counsel for a private party and then as District Attorney in a previous case of petitioner's (ECF #36, pp. 28-29). The Nevada Supreme Court affirmed the state district court denial of the motion as untimely, which, here, constitutes an independent and adequate state ground that prohibits this federal court from addressing the claim. *Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir. 1991); *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994) (a state procedural bar must be clear, consistently applied, and well-established at the time of petitioner's purported default); *Valladares v. District Court*, 910 P.2d 256, 260 (Nev. 1996)
(continued...)

**Ground 5**

Petitioner contends that the trial court erred by adjudicating him a habitual criminal in violation of his Sixth, Eighth, and Fourteenth Amendment rights (ECF #13, pp. 18-22). Petitioner claims that his prior convictions for conspiracy to commit murder and solicitation to commit murder were improperly used because the guilty plea agreement he accepted to those charges was the result of the State threatening to seek habitual criminal enhancement when, in fact, no basis existed for such enhancement. *Id*. at 20-21. He also claims that treating three of his Arizona convictions separately was contrary to the legislative intent of NRS 207.010 and, finally, that his sentence is disproportionate and therefore violates the Eighth Amendment. *Id*.

With respect to petitioner's claim that treating three of his Arizona convictions separately was contrary to the legislative intent of NRS 207.010, as this court has discussed earlier in this order, unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable under federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A state law issue cannot be mutated into one of federal constitutional law merely by invoking the specter of a due process violation. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.1996), cert. denied, 522 U.S. 881 (1997). Here, petitioner does not allege violation of a federal constitutional right. To the extent that petitioner raises a substantive issue regarding the application of NRS 207.010 and state legislative intent, it is a matter of state law and is not cognizable in a federal habeas corpus petition.

Petitioner also claims in ground 5 that his prior convictions for conspiracy to commit murder and solicitation to commit murder were improperly used because the guilty plea agreement he accepted to those charges was the result of the State threatening to seek habitual criminal enhancement when, in fact, no basis existed for such enhancement (ECF #13, pp. 20-21).

---

[3](...continued)

(establishing that a motion to disqualify a sitting judge for cause needed to be in compliance with the time frame set forth in NRS 1.235(1); *see also Towbin Dodge, LLC v. Eight Judicial Dist. Ct.*, 112 P.3d 1063 (Nev. 2005).

1    "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because

2    the defendant failed to pursue those remedies while they were available (or because the defendant did

3    so unsuccessfully), the conviction may be regarded as conclusively valid. *Lackawanna County Dist.*

4    *Atty. v. Coss*, 532 U.S. 394, 403 (2001). The exception to that rule is when "the prior conviction used

5    to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the

6    Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Id.* at 404.

7        Here, petitioner acknowledges that the time for challenging the conspiracy and solicitation

8    convictions in Case No. 148458 has long passed and that he does not now seek to vacate that conviction

9    and sentence (ECF #13, p. 21). Further, respondents are correct that petitioner does not claim a failure

10   to appoint counsel in that case, which resulted in two of the six convictions included by the State when

11   it sought a habitual criminal enhancement in this case.[4] Accordingly, petitioner's challenge to the use

12   of his past convictions for conspiracy and solicitation to commit murder as an enhancement is not

13   cognizable in federal habeas proceedings.

14       Finally, with respect to petitioner's claim in ground 5 that his sentence is disproportionate to his

15   crimes in violation of his Eighth Amendment rights, the Eighth Amendment prohibits imposition of a

16   sentence that is grossly disproportionate to the severity of the crime. *Solem v. Helm*, 463 U.S. 277, 286-

17   287 (1983); *Rummel v. Estelle*, 445 U.S. 263, 271-273 (1980). Successful challenges to non-capital

18   sentences on the basis of disproportionality are "exceedingly rare;" *Rummel*, 445 U.S. at 272, and

19   habitual criminal statutes have long been found constitutional. *See, e.g., McDonald v. Commonwealth*

20   *of Massachusetts*, 180 U.S. 311 (1901).

21       NRS 207.010(1)(a) provides that a person with two prior felonies may be sentenced as a habitual

22   criminal to five to twenty years imprisonment. NRS 207.010(1)(b) provides that a person with three

23   previous felonies may be sentenced as a habitual criminal to (1) life without the possibility of parole;

24   (2) life with the possibility of parole after ten years; or (3) a definite term of twenty-five years, with

25   eligibility for parole after ten years.

26   _____

27       [4] Moreover, the court may take judicial notice of the docket of the Eighth Judicial District
     Court for Clark County, Nevada, which reflects that petitioner was represented by counsel in Case

28   No. 148458, the solicitation and conspiracy case at issue here.

-13-

1   Here, petitioner had what totaled five prior felonies that could have been considered for purposes

2   of the habitual criminal enhancement: four Arizona convictions from 1980 to 1995 and two 1999

3   Nevada convictions that were transactionally related and therefore considered one felony conviction for

4   the purposes of the habitual criminal enhancement. See Exh. 35. Thus, petitioner faced a potential

5   sentence of life imprisonment without parole. NRS 207.010(1)(b)(1). The state district judge stated

6   that, considering factors such as petitioner's periods of steady employment and good employer reviews,

7   petitioner had demonstrated that he was not beyond rehabilitation. Exh. 35 at 6-8, 14. The state district

8   court sentenced petitioner to four concurrent terms of five to twenty years. Id. at 14.

9   In considering the claim that this sentence was grossly disproportionate, the Nevada Supreme

10  Court, which noted that the state district court is vested with broad discretion in considering a habitual

11  criminal enhancement, ultimately concluded:

12      [i]n the instant case, [petitioner] does not allege that the district court relied on
        impalpable or highly suspect evidence, and he cannot demonstrate that the relevant
13      sentencing statute is unconstitutional. We note that the sentence imposed was within
        the parameters provided by the relevant statute. At the sentencing hearing, after
14      arguments from counsel, the district court stated, "I think it was abundantly clear to me
        that this defendant is a habitual criminal. I mean he commits crimes year after year and
15      he's done it his whole life." Nevertheless, despite [petitioner's] eligibility for life
        imprisonment under the large habitual criminal statute, the district court imposed the
16      minimum possible sentence, finding that [petitioner] was not "unrehabilitatible."
        Therefore, based on all of the above, we conclude that the district court understood its
17      sentencing authority and did not abuse its discretion in adjudicating [petitioner] as a
        habitual criminal. Moreover, we conclude that [petitioner's] sentence does not
18      constitute cruel and unusual punishment.

19  Exhibit 43 at 7-8.

20  Petitioner faced a possible sentence of life without parole. That state district court sentenced

21  him to four concurrent terms of five to twenty years. It simply cannot be said that the Nevada Supreme

22  Court's rejection of the claim that this sentence is grossly disproportionate in violation of the Eighth

23  Amendment was contrary to or an unreasonable application of clearly established federal law.

24  Accordingly, ground 5 is denied in its entirety.

25  **Ground 8**

26  Petitioner claims that the grand jury identification procedure was unduly suggestive in violation

27  of his Fifth and Fourteenth Amendment due process rights (ECF #13, pp. 40-43). Petitioner states that

28  a Nordstrom manager, who had previously described the man he saw pick up a black Zegna jacket in

-14-

1   his department as age fifty to sixty, six feet tall and thin, was shown one photograph at the grand jury

2   proceedings and asked if that was the man he saw at Nordstrom.  *Id*.  The photo was a mug shot of

3   petitioner, bearing the writing: Name: Vito Bruno AKA John Sipes, Arrest Date: November 28, 2004.

4   *Id.*  The manager testified that the photo depicted the same man he saw, despite the fact that petitioner

5   is 5' 9" and 215 pounds.  *Id*.

6          The record reflects that the manager testified before the grand jury that he saw a man of

7   approximately age fifty pick up the jacket.  Exh. 2 at 21.  When he was shown a photograph and asked

8   if that was the man in the store on the date in question, he responded: "I do recognize his profile."  *Id*.

9   at 23.

10          At trial, outside the presence of the jury, the parties conducted a *voir dire* of the manager.  Exh.

11   19 at 33-40.  He testified that his identification of petitioner was based on recollection of seeing him

12   at Nordstrom.  *Id*.  The state district court therefore permitted the manager to testify; he identified

13   petitioner in court, and the defense cross-examined him regarding the identification during the grand

14   jury proceedings.  Exh. 19 at 37-40; 63-66.  The court subsequently instructed the jury regarding the

15   in-court identification.  Exh. 22 at 33 (jury instruction no, 30).

16          The U.S. Supreme Court has held that even if a petitioner demonstrates error during grand jury

17   proceedings, such error does not warrant automatic reversal of a conviction.  *U.S. v. Mechanik*, 475 U.S.

18   66, 73 (1986).  Rather, such errors are rendered non-prejudicial once a trial jury has reached a verdict

19   of guilt.  *Id*. at 70-71.  A grand jury is convened in order to determine whether probable cause exists to

20   force a criminal defendant to suffer the hardship of a criminal trial.  Because a trial jury is tasked with

21   determining actual guilt, once a trial jury has found guilt beyond a reasonable doubt, it is presumed that

22   any error during the grand jury proceedings was harmless beyond a reasonable doubt.  *Id*.  The Ninth

23   Circuit Court of Appeals has reiterated that errors in grand jury proceeding are typically harmless once

24   a guilty verdict is rendered.  *U.S. v. Navarro*, 608 F.3d 529, 538-539 (9th Cir. 2010); *see also Neder v.

25   U.S.*, 527 U.S. 1, 8 (1999) (discussing how the Court has found a very limited class of errors to be

26   structural and thus subject to automatic reversal, including complete denial of counsel; biased trial

27   judge; racial discrimination in jury selection; denial of self-representation at trial; denial of public trial;

28   and defective reasonable-doubt instruction) (internal citations omitted).  Even assuming, *arguendo*, that

1   the grand jury identification procedure was unduly suggestive, any such error was rendered harmless

2   by the subsequent guilty verdict.

3          Moreover, the claim was procedurally defaulted in state court.  The state district court cited NRS

4   34.810(1)(b)(2) and ruled that the claim should have been raised on direct appeal and was deemed

5   waived.  Exh. 55 at 4-5.  The Nevada Supreme Court affirmed the decision of the state district court,

6   denying the post-conviction habeas petition, without specifically referring to the substantive claim that

7   the grand jury identification procedure was unduly suggestive.  Exh 74.  The state district court's order

8   was the last reasoned decision on this claim.  Exh. 55 at 4-5.  Pursuant to *Ylst v. Nunnemaker*, 501 U.S.

9   797, 803 (1991), this court assumes that the Nevada Supreme Court, by its silent denial of appeal, does

10  not intend to change the last-reasoned decision by the state district court which imposed the procedural

11  bar of NRS 34.810(1)(b)(2).  Application of the procedural bar of NRS 34.810 is an independent and

12  adequate state ground.  *Vang v. Nevada*, 329 F.3d 1069, 1073–75 (9th Cir.2003); *see also Bargas v.*

13  *Burns*, 179 F.3d 1207, 1210–12 (9th Cir.1999).  Petitioner has presented no grounds for cause and

14  prejudice.  As such, ground 8 was procedurally defaulted in state court and is barred from consideration

15  by this court.  Ground 8 is therefore denied.

16        **C.  Ineffective Assistance of Counsel Claims**

17        **Grounds 6 & 7**

18          Finally, petitioner asserts several claims in grounds 6 and 7 that his trial counsel rendered

19  ineffective assistance in violation of his Sixth and Fourteenth Amendment rights (ECF #13, pp. 24-38).

20          Ineffective assistance of counsel claims are governed by the two-part test announced in

21  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner

22  claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

23  errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

24  Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v. Taylor,* 529

25  U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the

26  defendant must show that counsel's representation fell below an objective standard of reasonableness.

27  *Id.*  To establish prejudice, the defendant must show that there is a reasonable probability that, but for

28  counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*  A

1    reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*

2    Additionally, any review of the attorney's performance must be "highly deferential" and must adopt

3    counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of

4    hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that

5    counsel's actions might be considered sound trial strategy. *Id.*

6        Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance

7    of counsel resulting in prejudice, "with performance being measured against an objective standard of

8    reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005)

9    (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based

10   on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that

11   there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

12   would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

13       If the state court has already rejected an ineffective assistance claim, a federal habeas court may

14   only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland*

15   standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's

16   conduct falls within the wide range of reasonable professional assistance. *Id.*

17       The United States Supreme Court has described federal review of a state supreme court's

18   decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

19   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The

20   Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . .

21   through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal

22   habeas review of an ineffective assistance of counsel claim is limited to the record before the state court

23   that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401. The United States Supreme

24   Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding

25   claims of ineffective assistance of counsel:

26       Establishing that a state court's application of *Strickland* was unreasonable under §
         2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are
27       both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320,
         333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,
28       review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland*

-17-

standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S.Ct. at 788. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

**Ground 6(A)**

Petitioner claims that trial counsel was ineffective in failing to review disclosures provided to her by the district attorney and failing to file a motion to sever offenses and charges stemming from both Nordstrom and Neiman Marcus department stores (ECF #13, pp. 24-25).

A federal habeas petitioner is required to specifically plead a legal theory and the facts that demonstrate that petitioner is entitled to relief. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). The court agrees with respondents that petitioner fails to identify what disclosures defense counsel failed to review and what those disclosures would have revealed (*see* ECF #36, p. 35).

The Nevada Supreme Court reached the conclusion that

> [petitioner] failed to identify what documents defense counsel failed to review or how the unidentified disclosures would have had a reasonable probability of altering the outcome of his trial. Further, as there was overwhelming evidence due to his confession, the testimony of the stores' employees, and the physical evidence, [petitioner] failed to demonstrate that there was a reasonable probability of a different outcome of the trial had his counsel reviewed additional documents provided by the State.

Exh. 74 at 3.

The court also agrees with respondents that petitioner's claim in ground 6(A) that counsel was ineffective for failing to file a motion to sever is belied by the record (ECF #13, pp. 24-25; ECF #36, p. 36). Nevada law expressly permits trying all the charges together; severance is only required when a defendant shows that tying the charges together would be manifestly prejudicial. NRS 173.115(2). The Nevada Supreme Court concluded: "As the evidence produced at trial indicated that the charges

stemmed from a common scheme, [petitioner] failed to demonstrate that a motion to sever the charges would have had a reasonable probability of success.  Therefore, the district court did not err in denying this claim." Exh. 74 at 4.

As petitioner failed to show what disclosures his counsel failed to review or that a reasonable probability existed that if she had reviewed additional documents the outcome of the trial would have been different and failed to show that a motion to sever the charges would have had a reasonable probability of success, he has failed to demonstrate the Nevada Supreme Court's decision regarding the claims in ground 6(A) was contrary to or an unreasonable application of clearly established federal law.

**Grounds 6(B) & (C)**

Petitioner asserts that trial counsel was ineffective for failing to challenge the presumption of probable cause finding to detain and arrest petitioner on count 8 (burglary) from the alleged stolen wallet from Nordstrom (ECF #13, p. 25, ground 6(C)).  Petitioner also claims that trial counsel was ineffective in failing to file a motion to dismiss all charges stemming from the Neiman Marcus store based on the fruit of the poisonous tree doctrine and lack of a search warrant (ECF #13, p. 25, ground 6(B)).

Probable cause to conduct a warrantless arrest exists when police have reasonably trustworthy information regarding facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested.  *Beck v. State of Ohio*, 379 U.S. 89 (1964).

The court has set forth above the testimony regarding loss prevention officers' observation of petitioner on surveillance video immediately prior to his arrest (*see* discussion of grounds 1, 2, and 9, *supra*).

The Nevada Supreme Court upheld the denial of this claim, recounting that

> After viewing [petitioner] over the surveillance video, security approached [petitioner]. [Petitioner] saw security come near him, then he reentered the store and dropped the wallet inside.  The mall security guards then detained appellant until the police arrived.  Thus, [petitioner] failed to demonstrate that there was not probable cause to arrest him.

Exh. 74 at 4.

Petitioner was observed exiting a van that loss prevention personnel had connected to a theft the day before as well as attempting to exit Nordstrom with a wallet he had not paid for.  Exh. 19 at 213-223; Exh. 21 at 19-20.  As such, petitioner cannot demonstrate that the Nevada Supreme Court's conclusion that he failed to establish deficient performance under *Strickland* on this claim was contrary to or an unreasonable application of clearly established federal law.

Petitioner relatedly argues that his counsel was ineffective in failing to challenge the search incident to arrest of his pockets that yielded the Neiman Marcus receipt for the return of the cashmere Zegna jacket (ECF #13, p. 25; *see also* Exh. 19, p. 257).

A search incident to a lawful arrest is an exception to the general rule that warrantless searches violate the Fourth Amendment.  The exception allows a police officer making a lawful arrest to conduct a search of the area within the arrestee's immediate control, that is, the area from within which he or she might gain possession of a weapon or destructible evidence.  *Arizona v. Gant*, 556 U.S. 332, 337-338 (2009); *U.S. v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014).

As petitioner has failed to demonstrate no probable cause existed to arrest him, he cannot show that police officers' search of his person incident to arrest was unlawful.  Thus, he cannot show that the Nevada Supreme Court did not reasonably apply *Strickland* in affirming the denial of what are now federal grounds 6(B) and (C).

**Grounds 6(D) & E**

Petitioner claims in ground 6(D) that trial counsel was ineffective for failing to file a motion to suppress his coerced confession (ECF #13, p. 25).  In ground 6(E) he asserts that counsel was ineffective for failing to file a motion to suppress evidence of the video surveillance tape that allegedly shows him stealing the wallet from Nordstrom on the basis that it was of poor quality.  *Id*. at 25-26.

In order to prevail on a claim that counsel rendered ineffective assistance for failing to file a motion to suppress, petitioner must show that such motion had a reasonable likelihood of success. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

With respect to counsel not filing a motion to suppress petitioner's confession, the Nevada Supreme Court concluded that petitioner "failed to demonstrate that his trial counsel was deficient or that he was prejudiced."  Exh. 74 at 3.  Specifically, the court noted:

The question of admissibility of a confession is primarily a factual question addressed to the district court: where that determination is supported by substantial evidence, it should not be disturbed on appeal. [citation omitted]. Moreover, in determining whether a confession is voluntary, the court looks at the totality of the circumstances. [citation omitted]. Upon his arrest, appellant was read his Miranda rights and then agreed to talk with the police. [citation omitted]. The circumstances indicate that appellant's confession was voluntary. As such, appellant failed to demonstrate that a motion to suppress had a reasonable likelihood of success. [citation omitted].

Exhibit 74 at 2-3.

The record indicates that when petitioner was arrested he was read his Miranda rights and then agreed to speak with police. Exh. 19 at 246; 262-263. The Nevada Supreme Court is also correct in pointing out that petitioner failed to demonstrate (or even allege in a conclusory fashion) that a motion to suppress had a reasonable likelihood of success. The state supreme court's rejection of the claim corresponding to Ground 6(D) was neither contrary to nor an unreasonable application of *Strickland* or other clearly established federal law.

The Nevada Supreme Court also affirmed the denial of petitioners claim that trial counsel was ineffective for failing to file a motion to suppress the video surveillance tape. Exh. 74 at 5. Observing first that state district courts have considerable discretion to determine the relevance and admissibility of evidence, the Nevada Supreme Court explained that a "district court's decision to admit or exclude evidence will not be reversed on appeal unless it is manifestly wrong. Nothing in the record supports [petitioner's] contention that the videotape was of poor quality." *Id*.

This court agrees that the record is devoid of any support for the allegation that the videotape was of poor quality. The Nevada Supreme Court's determination regarding federal ground 6(E) was neither contrary to nor an unreasonable application of *Strickland* or other clearly established federal law.

**Ground 6(F)**

Petitioner claims that trial counsel was ineffective in failing to file a motion *in limine* to preclude reference to evading arrest on count 8, because evading arrest is not an element of the charge of burglary and such reference only inflamed the jury's passion and resulted in an unjust decision (ECF #13, p. 26).

The Nevada Supreme Court affirmed the denial of this claim:

At trial, the security guards and the officers testified that appellant struggled when they attempted to arrest him. Appellant claimed that, as evading arrest is not an element of burglary, any reference to his evading arrest should have been excluded. Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced. The

security guards and police officers simply stated the events that occurred as they attempted to arrest appellant. Further, as there was overwhelming evidence due to [petitioner's] confession, the testimony of the stores' employees, and the physical evidence, appellant failed to demonstrate that there was a reasonable probability of a different outcome of the trial had his counsel attempted to exclude reference to his evading arrest.

Exhibit 74 at 6.

The record contains testimony regarding how events unfolded as petitioner was detained. A Nordstrom loss prevention officer testified that a scuffle occurred as they were attempting to detain petitioner; he described petitioner as "swinging his arms . . . trying to pull away from us." Exh. 19 at 217-218. A police officer testified that when he attempted to place petitioner in handcuffs, petitioner resisted "briefly for a few seconds and then a few seconds later he said I'm not resisting," and he was placed in handcuffs. Exh. 19 at 245. The testimony amounts to no more than minor details of the arrest. Considering the evidence presented to support his conviction, petitioner failed to satisfy the prejudice prong of *Strickland*. The Nevada Supreme Court's determination was neither contrary to nor an unreasonable application of *Strickland* or other clearly established federal law.

**Ground 6(G)**

Petitioner asserts that trial counsel was ineffective in filing a motion to disqualify the trial judge from presiding over sentencing because the motion "inadvertently put in to question the integrity of [the state district judge's] impartiality" (ECF #13, p. 26). Petitioner states that counsel should have instead filed a motion to disqualify before the trial. *Id*.

The Nevada Supreme Court, observing that petitioner appeared to argue that he was sentenced more harshly than he would have been absent the motion to disqualify, reasoned:

[Petitioner] failed to demonstrate that his trial counsel was deficient or that he was prejudiced. "Tactical decisions (of counsel) are virtually unchallengeable absent extraordinary circumstances" and appellant failed to demonstrate any such circumstances. [citation omitted]. Further, appellant failed to demonstrate that the outcome of his sentencing hearing would have been different had his trial counsel not filed the challenged motion. [citation omitted].

Exhibit 74 at 6-7.

This court notes that petitioner stated that he did not believe any basis existed to move to disqualify the trial judge until after the verdict and before sentencing (*see* ground 4, *supra*). Moreover, the Nevada Supreme Court reasonably applied *Strickland* in pointing out that a tactical decision such

-22-

1    as this is virtually unassailable on the independent performance prong and in determining that petitioner

2    also failed to demonstrate prejudice.[5]

3          In sum, the Nevada Supreme Court's affirmance of the denial of the ineffective assistance of

4    counsel claims set forth here in ground 6 was not contrary to or an unreasonable application of

5    *Strickland* and other clearly-established federal law.  Accordingly, ground 6 is denied.

6          **Ground 7(A)**

7          Petitioner alleges that his counsel was ineffective in failing to raise on direct appeal the issue

8    of the Nordstrom manager's in-court identification of petitioner because it "was mistakenly based on

9    prior contact identification" (ECF #13, pp. 32-34).

10         The Nevada Supreme Court concluded that petitioner failed to demonstrate that his counsel was

11   deficient or that he was prejudiced, explaining that:

12         [t]he applicable standard for pre-trial identifications is whether, considering the totality
           of the circumstances, "'the confrontation conducted in this case was so unnecessarily
13         suggestive and conducive to irreparable mistaken identification that [petitioner] was
           denied due process of law.'" *Jones v. State*, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979)
14         (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)).  This court analyzes this issue
           in a two step inquiry: (1) whether the procedure was unnecessarily suggestive; and (2)
15         whether, under all the circumstances, the identification is reliable despite an
           unnecessarily suggestive identification procedure.  *Wright v. State*, 106 Nev. 647, 650,
16         799 P.2d 548, 550 (1990).

17         Trial counsel thoroughly cross-examined [the witness] regarding his grand jury
           testimony and the lack of any photo line-up to identify appellant prior to trial, thereby
18         exposing any deficiencies in the procedure to the jury, which was charged with
           evaluating the weight and credibility of such testimony.  *See Steese v. State*, 114 Nev.
19         479, 498, 960 P.2d 321, 333 (1998).  As [the witness] testified that he remembered
           [petitioner] from Nordstrom, [petitioner] failed to demonstrate that this claim had a
20         reasonable probability of success on appeal.  Further, as there was overwhelming
           evidence due to his confession, the testimony of the store employees, and the physical
21         evidence, [petitioner] failed to demonstrate that he was prejudiced by the failure to
           include the claim on his direct appeal.  *See Kirksey v. State*, 112 Nev. 980, 990, 923 P.2d
22         1102, 1109 (1996).

23   Exh. 74 at 8-9.

24         As this court relayed in its discussion of ground 8:  petitioner states that a Nordstrom manager,

25   who had previously described the man he saw pick up a black Zegna jacket in his department as age

26   ─────────────

           [5]

27   It is again worth noting that the state district judge adjudicated petitioner a habitual criminal, which
     carried a possible sentence of life without parole, but sentenced him to four concurrent terms of five to
28   twenty years.  Exh. 36.

                                            -23-

fifty to sixty, six feet tall and thin, was shown one photograph at the grand jury proceedings and asked if that was the man he saw at Nordstrom (ECF #13, pp. 40-43). The photo was a mug shot of petitioner, bearing the writing: Name: Vito Bruno AKA John Sipes, Arrest Date: November 28, 2004. *Id*. The manager testified that the photo depicted the same man he saw, despite the fact that petitioner is 5' 9" and 215 pounds. *Id*.

The grand jury transcript reflects that the manager testified that he saw a man of approximately age fifty pick up the jacket. Exh. 2 at 21. When he's shown a photograph and asked if that was the man in the store on the date in question, he responded: "I do recognize his profile." *Id*. at 23.

At trial, outside the presence of the jury, the parties conducted a *voir dire* of the manager. Exh. 19 at 33-40. He testified that his identification of petitioner was based on recollection of seeing him at Nordstrom. *Id*. The state district court therefore permitted the manager to testify; he identified petitioner in court, and the defense cross-examined him regarding the identification during the grand jury proceedings. Exh. 19 at 37-40; 63-66. The court subsequently instructed the jury regarding the in-court identification. Exh. 22 at 33 (jury instruction no. 30).

This court concludes that the Nevada Supreme Court reasonably applied *Strickland* in affirming the denial of this claim.

**Ground 7(B)**

Petitioner alleges that trial counsel was ineffective in failing to raise on appeal the prosecution's alleged *Brady* violation, that is, the fact that defense counsel did not receive the mug shot of petitioner at issue in the claims regarding an unduly suggestive identification procedure until the day of trial (ECF #13, pp. 34-38). Respondents argue that, as in this case, when the defense obtains the evidence in question, *Brady* is inapplicable (ECF #36, p. 45).

In *Brady v. Maryland*, the Supreme Court held that due process requires the prosecution to disclose "evidence favorable to an accused upon request … where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Evidence is material when it gives rise to a reasonable probability that the trial's result would have been different if the prosecutor disclosed the evidence. *U.S. v. Bagley*, 473 U.S. 667, 682 (1985).

1   This court is unconvinced that *Brady* is applicable. Not only did the defense receive the

2   photograph, albeit late, but it is entirely unclear that the photograph was material to either guilt or

3   punishment. However, the court assumes, *arguendo*, that the photograph was subject to disclosure

4   under *Brady*. As set forth immediately above in the ground 7(A) discussion, at trial, outside the

5   presence of the jury, defense counsel indicated that she wished to move to suppress the Nordstrom

6   manager's in-court identification of petitioner on the basis that the identification procedure before the

7   grand jury was unduly suggestive. Exh. 19 at 33-35. The parties then conducted a *voir dire* of the

8   manager with respect to his grand jury identification of the mug shot. *Id*. at 36-40. He testified that his

9   identification of petitioner was based on his recollection of seeing him at Nordstrom. *Id*. The state

10  district court therefore permitted the manager to testify, he identified petitioner in court, and the defense

11  cross-examined him regarding the identification during the grand jury proceedings. Exh. 19 at 39-40;

12  63-66. Defense counsel then actually moved to admit the photograph in an attempt to undermine the

13  in-court identification. *Id*. at 64. The court subsequently instructed the jury regarding the in-court

14  identification. Exh. 22 at 33 (jury instruction no. 30).

15  To the extent that *Brady* is even applicable, here, as with petitioner's others claims regarding

16  the photograph and identification, petitioner cannot show that appellate counsel was deficient in failing

17  to bring a *Brady* claim on direct appeal and, therefore, he cannot show a reasonable likelihood that the

18  claim would have succeeded on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000).

19  Petitioner has, therefore, failed to demonstrate that any of counsel's actions fell outside the wide

20  range of reasonable professional assistance required by *Strickland* or that counsel's actions were

21  unreasonably deficient and that such deficient performance prejudiced petitioner. Ground 7 is denied.

22  Accordingly, petitioner has failed to demonstrate that the state district court's decision regarding

23  any of his federal claims is contrary to, or involves an unreasonable application of, clearly established

24  federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination

25  of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

26  The court, therefore, denies the petition.

27

28

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF #13) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated:  this 24th day March, 2015.

_____
UNITED STATES DISTRICT JUDGE